# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAISER MARTIN GROUP, INC., formerly known as KAISER CONSTRUCTION CO., INC., *Plaintiff,* v. HAAS DOOR CO., *Defendant.* | CIVIL ACTION NO. 19-1823 |

**PAPPERT, J.**                                                                      July 2, 2019

## MEMORANDUM

      Kaiser Martin Group sued Haas Door Company for damages arising from the sale of twenty-four retractable garage doors manufactured by Haas. Kaiser, a construction company, was engaged by Brad and Andrea Heffler to construct a horse-riding arena on their property in Montgomery County, Pennsylvania. Kaiser alleges that Haas's doors, which were installed along the walls of the arena, leaked and caused damage to the structure.

      On February 15, 2019, Kaiser filed this lawsuit in the Montgomery County Court of Common Pleas, asserting six claims "directly and as an assignee of Heffler v. Haas" for breach of manufacturer's warranties (Count I), breach of implied warranties (Count II), breach of contract (Count III), negligence (Count IV), strict liability (Count V)[1] and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count VI). (Compl., ECF No. 1.) Kaiser served the Complaint on March 27 and Haas

---

[1] Kaiser withdrew the strict liability claim in response to Haas's Motion. (Pl.'s Resp. Opp'n Mot. Dismiss ¶ 10.)

timely removed the case to this Court on April 25.[2]  (Notice of Removal, ECF No. 1.)

Haas now moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).

For the reasons that follow, the Motion is granted with leave to amend some of the

claims.

I

Brad and Angela Heffler hired Kaiser to construct a horse-riding arena on their

property.  (Compl. ¶ 5.)  Kaiser entered a subcontract with Shank Door Company, an

authorized distributor of doors manufactured by Haas.  (*Id.* at ¶ 9.)  Shank installed

twenty-four retractable doors with glass window panes ("commercial model # CA-110")

along the walls of the arena.  (*Id.* at ¶¶ 6–7, 9.)

The Haas doors came with a written manufacturer's warranty.  (*Id.* at ¶ 10.)[3]

The warranty provides: "Haas Door Company warrants its commercial models CA-110

and CA-220 series aluminum garage door sections to be free from defects in

workmanship and material for a period of one (1) year from date of installation."

(Compl. Ex. A.)  It continues, in relevant part:

> The Warranty excludes: (1) Sections and/or component parts which have been damaged due to misuse; (2) Sections and/or components which have been improperly installed, maintained or operated; (3) Sections and/or components that have been damaged due to accident; (4) Sections and/or components that have been damaged due to exposure to corrosive fumes/chemicals, alkaline cleaning agents, condensation or fire; (5) Performance of coatings used to finish the garage door sections; (6) Repair and/or replacement labor charges, including travel cost; (7) Damages resulting from causes beyond the manufacturers [sic] control.

---

[2]    The Court has subject matter jurisdiction under 28 U.S.C. § 1332.  Kaiser is a Pennsylvania corporation with its principal place of business in Pennsylvania (Compl. ¶ 1) and Haas is an Ohio corporation with its principal place of business in Ohio.  (*Id.* at ¶ 2.)  In the Notice of Removal, Haas cited Kaiser's representation that "$80,000.00 is the estimated cost for just the replacement of the doors."  (Notice of Removal ¶ 2, ECF No. 1.)

[3]    Kaiser attached a "true and accurate copy of the warranty" to the Complaint as Exhibit A. (Compl. ¶ 10.)

2

> In the event any defect is claimed during the warranty periods, a claim in writing must be submitted to Haas Door Company, directed through an authorized Haas Door Company dealer or installer. This claim must be submitted within fifteen (15) days of the discovery of the suspected defect.
>
> . . .
>
> THE MANUFACTURER SHALL NOT BE RESPONSIBLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF ANY BREACH OF THIS EXPRESS LIMITED WARRANTY, including but not limited to any damage to buildings, other property or for any injuries or damages sustained by any person whomsoever, or the recovery of any direct or indirect costs such as shipping, travel, lost time, installation labor charges, paint or painting, cleaning, repair, or other building materials.
>
> . . .
>
> THIS WARRANTY PRINTED ABOVE IS THE ONLY WARRANTY APPLICABLE TO THE PURCHASE; THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF. ANY EXPRESS WARRANTY NOT PROVIDED HEREIN, AND ANY REMEDIES WHICH BUT FOR THE WARRANTY CONTAINED HEREIN MIGHT ARISE BY IMPLICATION OR OPERATION OF LAW, IS HEREBY EXCLUDED AND DISCLAIMED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE.
>
> . . .
>
> THIS WARRANTY IS NOT TRANSFERRABLE.

(*Id.* (emphasis in original).)

After the arena's construction, but before the warranty expired, the Hefflers discovered that the doors "leaked significantly, and that this leaking was causing damage to the Arena." (Compl. ¶ 11.) Kaiser alleges that "Haas was promptly and timely notified of the problem, and remedial efforts were taken to cure the leaking." (*Id.* at ¶ 12.) Haas replaced the doors' window panes with "new Haas-manufactured panes." (*Id.* at ¶ 13.) The replacement work was done by "an entity that Haas, based upon [Kaiser's] information and belief, retained to address a chronic leak problem that Haas Doors had been experiencing nationwide." (*Id.* at ¶ 14.)

The new windows came with their own written manufacturer's warranty. (*Id*. at ¶ 15.)[4] The warranty provides: "Haas Door Company warrants the reglazing of all glass windows on Haas Door CA110 overhead garage doors previously installed at 720 Swedesford Road, Ambler, Pennsylvania, for a period of one year from completion of the reglazing, against water intrusion from rain or snow." (Compl. Ex. B.) Like the warranty for the doors, this warranty required that "a claim in writing must be submitted to Haas Door Co., directed through an authorized Haas Door Co. dealer or installer . . . within 15 days of the discovery of the suspected defect." (*Id*.)

After the window repairs, the doors continued to leak. (*Id*. at ¶ 16.) "A request was then made for Haas to replace the defective Doors entirely." (*Id*. at ¶ 17.) Haas refused. (*Id*. at ¶ 18.)

In 2016, the Hefflers initiated a lawsuit by filing a Writ of Summons in the Montgomery County Court of Common Pleas. (*Id*. at ¶ 19.) In 2018, they filed a complaint against Kaiser, Haas and Shank asserting claims for breach of express and implied warranties, breach of contract, negligence, strict liability and violations of the UTPCPL. (*Id*.); *see* Complaint, Heffler v. Kaiser Constr. Co., Inc., No. 2016-23211 (Pa. Ct. Com. Pl. Montgomery Cty. Feb. 6, 2018).[5]

---

[4] Kaiser attached a "true and accurate copy of the warranty" to the Complaint as Exhibit B. (Compl. ¶ 15.)

[5] The Court takes notice of the Hefflers' state court complaint as a matter of public record. *See Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)) ("In deciding a Rule 12(b)(6) motion, a court . . . consider[s] only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Third Circuit Court of Appeals has held that courts "may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint" when resolving a 12(b)(6) motion to dismiss. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *see also Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 167 n.12

On September 5, 2018, Haas entered into a tolling agreement with the Hefflers, requiring the Hefflers to file a stipulation dismissing the lawsuit as to Haas without prejudice and tolling the limitations period "on all Claims from the Filing Date through and including the earlier of (i) February 1, 2020 or (ii) the initiation of a new lawsuit by the Hefflers against Haas . . . ." (Compl. Ex. C at 29–30.) The agreement provides that the Hefflers "shall be free, on ten days written notice to Haas's attorney . . . to assert Claims against Haas in a new lawsuit." (*Id.* at 30).

Kaiser alleges that "[o]n or about March 13, 2019, Heffler and Haas, through counsel, discussed coordinating dates for an inspection of the Doors, and that Kaiser would be filing a new action under the rights assigned in a settlement" between the Hefflers and Kaiser. (Compl. ¶ 21.) According to Kaiser, its settlement with the Hefflers is confidential. (*Id.* at ¶ 22.) Kaiser attached to the Complaint only one provision of the Settlement Agreement:

> 5. <u>Assignment of Claims</u>. The Hefflers hereby assign and convey to Kaiser all of their claims and causes of action against Haas as set forth in their complaint in the Lawsuit, including but not limited to all claims arising out of or relating to the existing Doors, the installation of such Doors, the failed remediation efforts, and/or the damages caused by water leakage from the Doors (collectively, the "Assigned Claims"). . . . In the event Settling Defendants fail to timely and fully complete the Project in accordance with Section 3 above, the Hefflers shall have the option (but not the obligation), exercisable on five days written notice to Kaiser's attorney, to revoke the assignment set forth in this Section 5 and to pursue the Assigned Claims on their own.

(Compl. Ex. C at 28.)

---

(E.D. Pa. 2017) ("Court dockets may be considered on a motion to dismiss because they are matters of public record.").

II

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the

same presumption." *Id*. This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (quoting *Connelly*, 809 F.3d at 786–87).

III[6]

A

Kaiser claims, on its own behalf and as the Hefflers' assignee, Haas breached two express warranties that: (1) its doors would be free from defects in workmanship and material for one year and (2) the reglazing of the doors' windows would be free from water intrusion for one year. *See* (Compl. Exs. A–B). With respect to the doors, the Complaint alleges that Haas was timely notified of defects and attempted to cure them, but its efforts failed. With respect to the windows, Kaiser alleges that Haas was timely notified of defects but refused to cure them.

Under Pennsylvania law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 13 Pa. Cons. Stat. § 2313(a)(1). Haas does not dispute that it made express

---

[6] Haas argues as a preliminary matter that the Court must dismiss the claims brought by Kaiser "as an assignee of Heffler v. Haas" because the Complaint does not sufficiently allege that the Hefflers assigned their claims to Kaiser. Haas contends the Complaint is deficient because it does not include the terms of Kaiser-Heffler Settlement Agreement (other than the Assignment of Claims provision) and does not show or allege that the agreement was signed by the parties.
    For the purposes of this Motion, Kaiser has sufficiently alleged it is the assignee of the Hefflers' claims. The Court is obligated to accept Kaiser's allegation—that "the Hefflers assigned all of their rights related to their claims against Haas to Kaiser" pursuant to the Assignment of Claims provision of their settlement agreement—as true. (Compl. ¶ 22); *see Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 266 n.5 (3d Cir. 2016) (finding under Rule 12(b)(6) that a complaint sufficiently alleged an assignment of antitrust rights even where the complaint did not include a written copy of the assignment agreement). This is not to say, however, that the Settlement Agreement is "confidential" or that the Court will permit the sealing of any filings which rely on or cite to it. *See* the Court's *Policies and Procedures* § II.C.3 (Oct. 2017).

7

warranties or that the doors' and windows' alleged defects breached those warranties. It moves to dismiss because Kaiser did not allege when either warranty went into effect, when the alleged defects were discovered or when written notice of the defects was provided to Haas as required.

*Gavornik v. Troy-Bilt, LLC*, 2009 WL 6969706 (Pa. Com. Pl. June 17, 2009), is the sole case on which Haas relies for its argument that a plaintiff must allege the specific dates on which it discovered a breach of warranty and gave notice to the warrantor to survive a motion to dismiss. In *Gavornik*, the court dismissed plaintiffs' express warranty claims on several grounds, including their failure to allege that they gave notice of the breach of warranty prior to filing suit. *See Gavornik*, 2009 WL 6969706. Here, Kaiser alleges that Haas received timely notice of each breach of warranty. *See* (Compl. ¶¶ 12, 27, 31). At this stage of the proceeding, the Court must accept these allegations as true.

Even so, Kaiser has not sufficiently alleged it is entitled to enforce breach of warranty claims on its own behalf and/or as the Hefflers' assignee. *See Kester v. Zimmer Holdings, Inc.*, 2010 WL 2696467 at *11 (W.D. Pa. June 16, 2010) (dismissing breach of express warranty claim where, among other deficiencies, the complaint did not "demonstrate any promise was directed at [plaintiff], as a consumer, to induce her into purchasing the product"); *Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1245 (Pa. Super. Ct. 2004), *aff'd*, 885 A.2d 982 (Pa. 2005).[7] Kaiser may amend its pleading to

---

[7] In *Goodman*, the Pennsylvania Superior Court observed that a manufacturer who makes a specific express warranty "must be able to retain some measure of control over both the class of people to whom it is willing to extend the warranty, and the precise parameters of the warranty that it will be obliged to honor." The court held that "third parties may enforce express warranties only under circumstances where an objective fact-finder could reasonably conclude that: (1) the party issuing the warranty intends to extend the specific terms of the warranty to the third party (either

8

clarify the rights Kaiser purports to have on its own behalf against Haas or as assignee and to allege facts which, taken as true, plausibly give rise to that party's entitlement to enforce the warranties.

B

Kaiser also claims, on its own behalf and as an assignee, that Haas breached the doors' implied warranties of merchantability, fitness for a particular purpose and reasonable workmanship.[8]  Haas argues that it expressly disclaimed all implied warranties in the warranty document.  *See* (Compl. Ex. A).  Kaiser contends that the disclaimer is unenforceable because it "was not discussed or bargained for by Heffler or Kaiser, and the parties did not learn of [the] disclaimer until this litigation."[9]  (Pl.'s Resp. Opp'n Mot. Dismiss ¶ 7.)  Kaiser also argues that the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act ("MMWA"), § 2301 *et seq.*, precludes Haas

---

directly, or through an intermediary); and (2) the third party is aware of the specific terms of the warranty, and the identity of the party issuing the warranty." *Id.* at 1246.  Applying this test, the *Goodman* court affirmed the dismissal of an express warranty claim where the warranty extended from the seller of a product to the manufacturer who bought it, but not to plaintiff, the ultimate consumer.

[8]   Haas correctly argues that the implied warranty of reasonable workmanship, like the implied warranty of habitability, is a warranty based in a contract for sale of a new home and inapplicable to the sale in this case.  *Ecksel v. Orleans Const. Co.*, 519 A.2d 1021, 1026 (Pa. Super. Ct. 1987); *see also Young v. Home Depot U.S.A.*, 2016 WL 8716423 at *7 (E.D. Pa. Sept. 30, 2016) ("[W]e can find no cases in which the Pennsylvania courts have applied the implied warranty of reasonable workmanship to anything other than new-home construction.").

[9]   This argument is in tension with Count I of the Complaint, which requires Kaiser to establish that the express warranty printed on the same document as the implied warranty disclaimer was at the basis of the parties' bargain.  *See supra* Section III.A.  Kaiser nonetheless believes it has raised a factual dispute, citing *Allen-Myland, Inc. v. Garmin Int'l, Inc.*, 140 A.3d 677, 688 (Pa. Super. Ct. 2016), for the proposition that a triable issue of fact as to the enforceability of a disclaimer arises where there is evidence that the bargaining process was complete before the seller issued the disclaimer to the buyer.  Kaiser does not allege, however, that Haas issued the implied warranty disclaimer to whoever purchased the doors after the bargaining process was complete. Kaiser argues only that Kaiser and/or the Hefflers were unaware of the disclaimer until this litigation.  This is a legal, rather than factual, argument regarding the conspicuousness of the written disclaimer.

9

from disclaiming implied warranties with respect to consumer products. (*Id.* at ¶¶ 7, 13.)

> Pennsylvania law provides:
>
> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

13 Pa. Cons. Stat. § 2316(b). Haas's attempt to disclaim implied warranties appears in a writing that specifically disclaims merchantability and fitness for a particular purpose and includes the language suggested by § 2316: "THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF." *See* (Compl. Ex. A). The only question for the Court, therefore, is whether this disclaimer was conspicuous as a matter of law. *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 259 (Pa. Super. Ct. 1997) (citing 13 Pa. Cons. Stat. § 1201(b)(10)).

A "conspicuous" term is "so written, displayed or presented that a reasonable person against which it is to operate ought to have noticed it." 13 Pa. Stat. and Cons. Stat. § 1201(b)(10). Pennsylvania courts consider the following factors to determine whether a reasonable person should have noticed a warranty disclaimer: the disclaimer's placement in the document, the size of the disclaimer's print and whether the disclaimer was highlighted by being printed in all capital letters or in a type style or color different from the remainder of the document. *Borden*, 701 A.2d at 259 (citing *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 889 (E.D. Pa. 1996)).

Haas's disclaimer of implied warranties is conspicuous. The text, printed legibly in capital letters, appears in a paragraph set apart from other text at the bottom of a one-page warranty document. (Compl. Ex. A); *see Allen-Myland, Inc. v. Garmin Int'l, Inc.*, 140 A.3d 677, 688 (Pa. Super. Ct. 2016) (deeming a disclaimer "conspicuous" that appeared on the front page of a guide book in capital letters in a legible font size); *D & D Transp. v. Freightliner, L.L.C.*, 2008 WL 919599 at *5 (M.D. Pa. Apr. 2, 2008) (deeming a disclaimer "conspicuous" that appeared on a one-page warranty document in capital letters, even though its was not larger in size than other text).

Having found the disclaimer conspicuous, the Court considers whether the MMWA precludes Haas from invoking it. The MMWA "provides relief for consumers damaged by breaches of both implied and express warranties." *In re Shop-Vac Mktg. & Sales Practices Litig.*, 964 F. Supp. 2d 355, 361 (M.D. Pa. 2013). Section 2308 of the Act governs implied warranties:

> (a) Restrictions on disclaimers or modifications
>
> No supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product . . . .
>
> (c) Effectiveness of disclaimers, modifications, or limitations
>
> A disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this chapter and State law.

15 U.S.C. § 2308. Haas contends the MMWA does not apply because the doors are not "consumer products" within the meaning of the Act.

The MMWA defines "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed

11

in any real property without regard to whether it is so attached or installed)." 15 U.S.C. § 2301(1). The doors at issue are "Commercial Aluminum Garage Doors." (Compl. Ex. A); *see also* (Compl. ¶ 7). Because their normal use is commercial, they are not consumer products under the MMWA.[10] *See, e.g.*, *People ex rel. Mota v. Cent. Sprinkler Corp.*, 174 F. Supp. 2d 824, 830 (C.D. Ill. 2001). Count II is dismissed with prejudice because amendment would be futile. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

C

Haas argues that Kaiser's breach of contract claim, which Kaiser brings on its own behalf and as the Hefflers' assignee, must be dismissed because it is duplicative of the breach of warranty claim. Kaiser argues that the breach of contract claim is distinct because it concerns Haas's obligations under its contract with Shank for the sale of the doors, to which Kaiser and the Hefflers are third-party beneficiaries.

Kaiser's attempt to distinguish Count I from Count III is unavailing. The breach Kaiser alleges in Count III is Haas's failure to provide doors that were not defective, as well as its failure to fix the defects. Whether Kaiser and/or the Hefflers were third-party beneficiaries to a contract between Shank and Haas is immaterial to fact that the alleged breach of contract is "subsumed" in the breach of warranty. *Pansini v. Trane*

---

[10] Moreover, the MMWA does not apply due to the nature of the purchase transaction in this case. The doors were purchased "pursuant to the Kaiser-Heffler construction contract," not over-the-counter as consumer products. (Compl. ¶ 7.) *See Miller v. Herman*, 600 F.3d 726, 737 (7th Cir. 2010) (windows are not consumer products when purchased in connection with the construction of a home) (citing 16 C.F.R. § 700.1(f) ("In the case where a consumer contracts with a builder to construct a home, a substantial addition to a home, or other realty (such as a garage or an in-ground swimming pool) the building materials to be used are not consumer products.")); *see also* 16 C.F.R. § 700.1(e) ("The coverage of building materials which are not separate items of equipment is based on the nature of the purchase transaction. . . . [W]here such products are at the time of sale integrated into the structure of a dwelling they are not consumer products as they cannot be practically distinguished from realty.").

12

*Co.*, 2019 WL 1299036 at *8 (E.D. Pa. Mar. 21, 2019), *reconsideration denied*, 2019 WL 2409740 (E.D. Pa. June 7, 2019) (citing cases dismissing breach of contract claims that rest on the same allegations as warranty claims). Count III is accordingly dismissed with prejudice. *See Phillips*, 515 F.3d at 236.

D

Kaiser pleads negligence in the alternative to its breach of warranty claim on its own behalf and as an assignee, arguing that the doors' negligent design, manufacture and/or marketing caused damage to the horse-riding arena. Haas moves to dismiss under the gist of the action doctrine.

The gist of the action doctrine is designed to maintain the conceptual distinction between contract and tort claims. *Turturro v. United States*, 43 F. Supp. 3d 434, 461 (E.D. Pa. 2014), *aff'd*, 629 Fed. App'x 313 (3d Cir. 2015) (citing *Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 548 (3d Cir. 2010)). To determine whether the gist of the plaintiff's action is a breach of contract or a tort, the Court looks to the nature of the duty the defendant allegedly breached. *Sales Benchmark Index LLC v. DeRosa*, 2018 WL 3918090 at *4 (E.D. Pa. Aug. 16, 2018) (citing *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 63 (Pa. 2014)). The labeling of a claim by the plaintiff is not controlling; rather:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract . . . then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno*, 106 A.3d at 68 (internal citations omitted).

Haas offers no legal support, and the Court finds none, for its argument that the gist of the action doctrine precludes Kaiser from asserting a claim of negligent design and manufacture together with breach of warranty under Pennsylvania law. Breach of warranty and negligence claims frequently proceed together in consumer lawsuits. *See, e.g.*, *Barton v. Lowe's Home Centers, Inc.*, 124 A.3d 349 (Pa. Super. Ct. 2015); *Hoffman v. Paper Converting Mach. Co.*, 694 F. Supp. 2d 359 (E.D. Pa. 2010); *see also Torres v. Lucca's Bakery*, 487 F. Supp. 2d 507, 513 (D.N.J. 2007) (finding a conflict between Pennsylvania and New Jersey law because "Pennsylvania law allows negligence and breach of warranty claims, but New Jersey only allows one statutory cause of action for strict liability").

Even so, the Complaint does not sufficiently allege that Haas owed Kaiser or the Hefflers a duty of care. The first step in an analyzing a negligence action is determining whether the defendant had a duty to the plaintiff. *Hoffman v. Paper Converting Mach. Co.*, 694 F. Supp. 2d 359, 368 (E.D. Pa. 2010) (citing *Berrier v. Simplicity Mfg.*, 563 F.3d 38, 62 (3d Cir. 2009).[11] The Complaint alleges only that "Haas had a duty to provide Doors in a . . . non-negligent manner, including without limitation the design, manufacture and marketing of the Doors." (Compl. ¶ 45.) Kaiser may amend its pleading to clarify whether Kaiser brings this claim on its own behalf or as assignee and to allege facts which, taken as true, show that Haas owed that party a duty to design, manufacture and market the doors with care.

---

[11] To prevail in a negligence action, the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question and actual loss or damage. *Hoffman*, 694 F. Supp. 2d at 368 (citing *Berrier*, 563 F.3d at 61).

14

E

Kaiser claims Haas violated the UTPCPL by selling doors it knew or should have known were defective, failing to comply with express and implied warranties and marketing the doors as fit for the arena "despite knowing about leaking problems with its door products."[12] (Compl. ¶ 56.) Haas moves to dismiss because the claim "suffers from the same deficiencies as all of the preceding counts." (Def.'s Mot. Dismiss ¶ 17.)

Under the UTPCPL, "unfair or deceptive acts or practices" include the following:

> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
> . . .
> (xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;
> ...
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 Pa. Cons. Stat. § 201–2(4). A plaintiff must show justifiable reliance on the defendant's wrongful conduct to bring a private cause of action. *Krishnan v. Cutler Grp., Inc.*, 171 A.3d 856, 886 (Pa. Super. Ct. 2017) (citing *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004)).

The Complaint does not allege that Kaiser and/or the Hefflers justifiably relied on any deceptive conduct by Haas. Kaiser alleges that the window replacement work was done by "an entity that Haas, based upon [Kaiser's] information and belief, retained to address a chronic leak problem that Haas Doors had been experiencing nationwide." (Compl. ¶ 14.) While this purports to show that Haas was aware of a

---

[12] For the reasons stated earlier, *see supra* Section III.B, Kaiser cannot sustain a UTPCPL claim on the grounds that Haas breached implied warranties.

15

large-scale problem with the doors by the time it attempted to remedy the problem, it does not suggest that Haas was deceptive in any way. Nor does it show that Kaiser and/or the Hefflers relied on any deception to their detriment.

Kaiser also fails to state a UTPCPL claim for breach of express warranties. As discussed earlier, Kaiser has not alleged that Kaiser or the Hefflers are entitled to enforce the express warranties at issue. *See supra* Section III.A. The Complaint also fails to allege that Kaiser and/or the Hefflers justifiably relied on Haas's warranties to their detriment. Kaiser may amend its pleading with allegations that, taken as true, plausibly give rise to Kaiser or the Hefflers' right to sue under the UTPCPL for breach of warranty.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.